1   **REICH RADCLIFFE & HOOVER LLP**
    Marc G. Reich (SBN 159936)
2   mgr@reichradcliffe.com
    Adam T. Hoover (SBN 243226)
3   adhoover@reichradcliffe.com
    4675 MacArthur Court, Suite 550
4   Newport Beach, CA 92660
    Phone:  (949) 975-0512
5   Fax: (949) 208-2839

6   **LIFSHITZ & MILLER**
    Joshua M. Lifshitz (*Pro Hac Vice to be submited*)
7   jml@jlclasslaw.com
    821 Franklin Ave., Suite 209
8   Garden City, NY 11530
    Phone: (516) 493-9780
9   Fax: (516) 280-7376

10   Attorneys for Plaintiff

11              **UNITED STATES DISTRICT COURT**

12            **NORTHERN DISTRICT OF CALIFORNIA**

13

14   JONATHAN RAUL, Individually and on Behalf of     Case No:  3:18-cv-07167
     All Others Similarly Situated,

15                Plaintiff,

16   v.                                              **CLASS ACTION COMPLAINT FOR**
                                                     **VIOLATIONS OF THE FEDERAL**
17   PANDORA MEDIA, INC., GREGORY B.                 **SECURITIES LAWS**
     MAFFEI, ROGER CONANT FAXON, DAVID J.
18   FREAR, JASON HIRSCHHORN, TIMOTHY                **Demand for Jury Trial**
     LEIWEKE, ROGER J. LYNCH, MICHAEL M.
19   LYNTON, JAMES E. MEYER, and MICKIE
     ROSEN,

20                Defendants.

21

22

23

24

25

26

27

28

Plaintiff Jonathan Raul ("Plaintiff") by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Pandora Media, Inc. ("Pandora" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Pandora and the Defendants.

## SUMMARY OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public shareholders of Pandora against the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company.

2.      On September 23, 2018, Pandora entered into an Agreement and Plan of Merger (the "Merger Agreement") with SiriusXM Holdings Inc. ("SiriusXM"), pursuant to which SiriusXM will acquire Pandora in an all-stock transaction valued at approximately $3.5 billion (the "Proposed Transaction").

3.      Pursuant to the Proposed Transaction, each holder of Pandora common stock will receive 1.44 shares of SiriusXM common stock for each share of Pandora common stock issued and outstanding immediately prior to the closing (the "Merger Consideration").

4.      On November 1, 2018, Defendant's authorized SiriusXM to file a materially incomplete and misleading preliminary registration statement on Form S-4 (the "Registration Statement") with the SEC, urging the Company's shareholders to vote in favor of the Proposed Transaction.

5.      The Registration Statement omits material information regarding the Proposed Transaction, rendering it false and misleading in violation of Sections 14(a) and 20(a) of the Exchange Act.

6.     As set forth more fully herein, Plaintiff seeks to enjoin Defendants from proceeding with the Proposed Transaction. In the event that the Proposed Transaction is consummated, Plaintiff seeks to recover damages from the Defendants for their violations of the Exchange Act.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.     This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.  Further, the Company's principal executive offices are located in this District.

## THE PARTIES

10.     Plaintiff is, and has been at all times relevant hereto, the owner of Pandora common stock.

11.     Defendant Pandora is a Delaware corporation with its principal executive offices located at 2100 Franklin Street, Suite 700, Oakland, California 94612.  The Company's common stock is traded on the New York Stock Exchange under the symbol "P."

12.     Defendant Gregory B. Maffei ("Maffei") has been the Chairman of the Board since September 2017.

13.     Defendant Roger Conant Faxon ("Faxon") has been a member of the Board since June 2015.

14.     Defendant David J. Frear ("Frear") has been a member of the Board since September 2017. Defendant Frear has also been the Senior Executive Vice President and Chief Financial Officer of Sirius XM since June 2015.

15.    Defendant Jason Hirschhorn ("Hirschhorn") has been a member of the Board since June 2017.

16.    Defendant Timothy Leiweke ("Leiweke") has been a member of the Board since April 2015.

17.    Defendant Roger J. Lynch ("Lynch") has been a member of the Board since September 2017.

18.    Defendant Michael M. Lynton ("Lynton") has been a member of the Board since August 2017.

19.    Defendant James E. Meyer ("Meyer") has been a member of the Board since September 2017.

20.    Defendant Mickie Rosen ("Rosen") has been a member of the Board since September 2015.

21.    Defendants Maffei, Faxon, Frear, Hirschhorn, Leiweke, Lynch, Lynton, Meyer, and Rosen are collectively referred to herein as the "Individual Defendants."

22.    The Individual Defendants, together with Defendant Pandora, are collectively referred to herein as the "Defendants."

## CLASS ACTION ALLEGATIONS

23.    Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Pandora (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

24.    This action is properly maintainable as a class action for the following reasons:

a.    The Class is so numerous that joinder of all members is impracticable. As of July 27, 2018, there were 266,318,724 Pandora common shares outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

b.    Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) of the Exchange Act by misrepresenting or omitting material information concerning the Proposed Transaction in the Registration

Statement; (ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Registration Statement as currently composed.

c.   Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

d.   Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

e.   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

f.   A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

25.   Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

26.   Pandora is a Delaware corporation and is one of the world's most popular music discovery platforms enabling its listeners to create personalized stations and playlists, as well as search and play songs and albums on-demand.

27.   Pandora utilizes content programming algorithms and data collected from its listeners to power Pandora's ability to predict listener music preferences, play music content suited to the tastes of each individual listener and introduce listeners to the music it thinks they will love.

### The Company Announces the Proposed Transaction

28.   On September 24, 2018, the Company issued a press release announcing the Proposed Transaction, which stated, in pertinent part:

NEW YORK and OAKLAND, Calif., Sept. 24, 2018 /PRNewswire/ -- Sirius XM Holdings Inc. (NASDAQ: SIRI) and Pandora Media, Inc. (NYSE: P) today announced a definitive agreement under which SiriusXM will acquire Pandora in an all-stock transaction valued at approximately $3.5 billion. The combination creates the world's largest audio entertainment company, with more than $7 billion in expected pro-forma revenue in 2018 and strong, long-term growth opportunities.

\*       \*       \*

**Transaction Details**

Pursuant to the agreement, the owners of the outstanding shares in Pandora that SiriusXM does not currently own will receive a fixed exchange ratio of 1.44 newly issued SiriusXM shares for each share of Pandora they hold. Based on the 30-day volume-weighted average price of $7.04 per share of SiriusXM common stock, the implied price of Pandora common stock is $10.14 per share, representing a premium of 13.8% over a 30-day volume-weighted average price. The transaction is expected to be tax-free to Pandora stockholders. SiriusXM currently owns convertible preferred stock in Pandora that represents a stake of approximately 15% on an as-converted basis.

The merger agreement provides for a "go-shop" provision under which Pandora and its Board of Directors may actively solicit, receive, evaluate and potentially enter negotiations with parties that offer alternative proposals following the execution date of the definitive agreement. There can be no assurance this process will result in a superior proposal. Pandora does not intend to disclose developments about this process unless and until its Board of Directors has made a decision with respect to any potential superior proposal.

**Approvals**

The transaction has been unanimously approved by both the independent directors of Pandora and by the board of directors of SiriusXM.

The transaction is expected to close in the first quarter of 2019. It is subject to approval by Pandora stockholders, expiration or termination of any applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and certain competition laws of foreign jurisdictions and other customary closing conditions.

\*       \*       \*

**Advisors**

Allen & Company LLC and BofA Merrill Lynch are serving as financial advisors to SiriusXM and Baker Botts LLP and Simpson Thacher & Bartlett LLP are serving as its legal counsel. Centerview Partners LLC, LionTree Advisors LLC and Morgan Stanley & Co. LLC are serving as financial advisors to Pandora and Sidley Austin LLP is acting as legal counsel.

## The Proposed Transaction is Unfair to the Company's Shareholders

29.    As currently contemplated, the Proposed Transaction is unfair to the Company's shareholders.

30.    The Merger Consideration being offered to the Company's Shareholders pursuant to the Proposed Transaction is unfair and inadequate, as the value of the Company's stock is indeed in

excess of what is being offered to the Company's shareholders, given the prospect for future growth of the Company.

31.   For instance, on April 29, 2018, the Company announced its financial results for the first quarter of 2018, reporting revenue of $319.2 million (12% growth from the previous year) and subscription revenue of $104.7 million (63% growth from the previous year).

32.   Commenting on the Company's strong financial performance, Roger Lynch ("Lynch"), the Company's CEO, stated "[w]e, obviously, exceeded expectations for revenue and adjusted EBITDA in principle because we saw strength building later in the quarter."

33.   Thereafter, on July 31, 2018, the Company announced its financial results for the second quarter of 2018, reporting revenue of $384.8 million (12% growth from the previous year) and subscription revenue of $113.7 million (67% growth from the previous year).

34.   Again, CEO Lynch commented on the positive results, noting:

> We made continued progress against our strategy with total revenue growing 12%, subscription revenue up 67% and ad hour trends improving for the third straight quarter. New partnerships with top brands like Snap and AT&T, as well as enhancements to our ad tech and programmatic offerings, position us to further accelerate growth and ownership of the expanding digital audio marketplace.

35.   As such, the Merger Consideration's implied value of $10.05 at the time of the Proposed Transaction's announcement is significantly less than the value of the Company's shares, given the Company's positive financial trend.

### Compensation to the Company's
### Officers and Directors Resulting From the Proposed Transaction

36.   Certain of the officers and/or directors of the Company have significant financial interests in completing the Proposed Transaction.  Stock options, restricted stock units, and performance awards that have been awarded to the Company's officers and directors will vest and will be converted to the right to receive Merger Consideration.  The following charts, taken from the Registration Statement, shows the potential payouts to Pandora's officers and directors as a result of the Proposed Transaction:

| Executive Officers | Number of Unvested Stock Options (#)(1) | Value of Unvested Stock Options ($)(1) | Number of RSUs (#)(2) | Value of RSUs ($)(2) | Number of Performance Awards (#)(3) | Value of Performance Awards ($)(3) | Estimated Total Value of Unvested Equity Awards ($) |
|---|---|---|---|---|---|---|---|
| Roger Lynch* | 2,368,013 | 6,727,740 | 510,169 | 4,729,267 | - | - | 11,457,007 |
| Naveen Chopra | 308,570 | 818,320 | 771,518 | 7,151,972 | - | - | 7,970,292 |
| Stephen Bené | 136,084 | 411,280 | 424,368 | 3,933,891 | 150,000 | - | 4,345,171 |
| David Gerbitz | 147,334 | 525,760 | 466,014 | 4,319,950 | 175,000 | - | 4,845,710 |
| Aimée Lapic | 172,000 | 729,280 | 499,002 | 4,625,749 | - | - | 5,355,029 |
| Christopher Phillips | 199,250 | 644,480 | 559,925 | 5,190,505 | 200,000 | - | 5,834,985 |
| Kristen Robinson | 113,334 | 381,600 | 404,993 | 3,754,285 | 150,000 | - | 4,135,885 |
| John Trimble | 185,250 | 585,120 | 553,787 | 5,133,605 | 200,000 | - | 5,718,725 |

| Non-Employee Directors | Number of RSUs (#)(1) | Value of RSUs ($)(1) |
|---|---|---|
| Roger Faxon | 39,293 | 364,246 |
| David J. Frear | 39,293 | 364,246 |
| Jason Hirschhorn | 39,293 | 364,246 |
| Timothy Leiweke | 39,293 | 364,246 |
| Michael M. Lynton | 39,293 | 364,246 |
| Gregory B. Maffei | 39,293 | 364,246 |
| James E. Meyer | 39,293 | 364,246 |
| Mickie Rosen | 39,293 | 364,246 |

37.     The Compensation to the Company's officers and directors resulting from the Proposed Transaction is egregious, as management's compensation described in the above chart from Registration Statement provides for total compensation of nearly $53 million for the Company's executives upon completion of the Proposed Transaction.  The Board and the Company's management have put their own interests ahead of the best interests of the Company's shareholders.

### FALSE AND MISLEADING STATEMENTS

### AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

38.     On November 1, 2018, Defendants authorized the filing by SiriusXM of the materially misleading Registration Statement with the SEC, urging the Company's shareholders to vote in favor of the Proposed Transaction.  The Registration Statement contained the financial analyses prepared by Centerview Partners LLC ("Centerview") and LionTree Advisors LLC ("LionTree"), the Company's financial advisors for the Proposed Transaction. Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to Pandora's shareholders to ensure that it did not contain any material false and misleading statements or material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for Pandora's shareholders to make an informed decision

concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Centerview's Analyses and Fairness Opinion

39.     With respect to Centerview's *Selected Public Companies Analyses*, the Registration Statement fails to disclose: (i) the basis for applying a range of EV / NTM multiples of 1.25x to 2.00x when the estimated EV / NTM Revenue multiples observed for selected companies as of September 21, 2018 were 3.60x to 4.12x; and (ii) what benchmarking analysis, if any, Centerview performed in relation to the selected companies.

40.     With respect to Centerview's *Selected Transactions Analysis*, the Registration Statement fails to disclose: (i) the basis for choosing target companies with EBITDA margins of less than 20%; and (ii) what benchmarking analysis, if any, Centerview performed in relation to the target companies.

41.     With respect to Centerview's *Discounted Cash Flow Analyses*, the Registration Statement fails to disclose: (i) the basis for using discount rates ranging from 9.50% to 11.50% to calculate a range of illustrative equity values for Pandora in the Scenario 1a and 2 Forecasts; (ii) the basis for applying multiples of 10.0x to 12.5x to Adjusted EBITA in respect to the Scenario 1a Forecasts; (iii) the basis for applying multiples of 10.5x to 13.0x to Adjusted EBITA in respect to the Scenario 2 Forecasts, and why those multiples are different from those used in Scenario 1a; and (iv) the inputs and assumptions used by Centerview to determine the estimated value for the Company's net operating loss carryforwards ("NOLs") for each of the analyses.

42.     With respect to Centerview's *Other Factors*, the Registration Statement: (i) notes that Centerview reviewed and considered "publicly available stock price targets of selected research analysts for Pandora common stock," but does not disclose which research analysts targets were reviewed; (ii) fails to disclose Centerview's basis for using an equity discount rate equal to 11.5% in its Illustrative Present Value of Future Share Price Analysis of Pandora on an EV / Adjusted EBITDA Multiple Basis in both the Scenario 1a and 2 forecasts ; (iii) fails to disclose Centerview's basis for applying EV / NTM Revenue multiples of 1.50x and 1.75x and using an equity discount rate equal to 11.5% in its Illustrative Present Value of Future Share Price Analysis of Pandora on an EV / Revenue Multiple Basis in the Scenario 1a Forecasts; and (iv) fails to disclose Centerview's basis for applying

EV / NTM Revenue multiples of 1.75x and 2.00x and using an equity discount rate equal to 11.5% in its Illustrative Present Value of Future Share Price Analysis of Pandora on an EV / Revenue Multiple Basis in the Scenario 2 Forecasts.

43.     Lastly, concerning Centerview's Illustrative Future Share Price Analysis of SiriusXM Pro Forma for the transactions of an EV / Adjusted ABITDA Multiple Basis, the Registration Statement does not disclose: (i) the basis for assuming approximately $50 million run-rate Synergies to be phased in over two years following the closing of the transaction, as well as the basis for applying; and (ii) the basis for applying EV / NTM Adjusted EBITDA multiples of 17.4x and 18.4x in both the Scenario 1a and 2 Forecasts.

### LionTree's Analyses and Fairness Opinion

44.     With respect to LionTree's DCF Analysis for Pandora on a Stand-Alone Basis, the Registration Statement fails to disclose: (i) the basis for applying a range of terminal value multiples of 9.5x to 11.5x to Pandora's estimated EBITDA and discount rates ranging from 9.00% to 10.50% concerning the Scenario 1a Forecasts; and (ii) the basis for applying a range of terminal value multiples of 10.0x to 12.0x to Pandora's estimated EBITDA and discount rates ranging from 9.00% to 10.50% concerning the Scenario 2 Forecasts.

45.     With respect to LionTree's *Selected Public Companies Analysis*, the Registration Statement fails to disclose what benchmarking analysis, if any, LionTree performed in relation to the companies selected in its analysis.

46.     With respect to LionTree's Analyst Price Target Analysis for SiriusXM, the Registration Statement notes that LionTree reviewed share price targets of SiriusXM common stock prepared and published by 12 equity research analysts, but fails to disclose which analysts targets were used.

47.     Lastly, with respect to LionTree's Earnings Performance History Analysis for Sirius XM, the Registration Statement notes that LionTree used publicly available information to compare SiriusXM's quarterly sales to the average estimated quarterly sales of SiriusXM prepared and reported by equity research analysts over the same period, but fails to disclose which analysts were used.

48.    With respect to the various analysis, the omitted information and key inputs are material to Pandora shareholders, and their omission renders the summary of the financial advisors' fairness opinions materially incomplete and misleading.

**Background of the Proposed Transaction**

49.    The Registration Statement omits material information relating to the sales processes leading up to the Proposed Transaction.

50.    The Registration Statement fails to disclose whether or not the Company entered into any confidentiality agreements during its "strategic review" in 2016, and if it did, whether those agreements are still in place or contain any "don't ask, don't waive" standstill provisions that would preclude the parties in question from making a superior bid for the Company.

51.    The Registration Statement notes that in March 2016, the Company's Board concluded that "continuing to execute the company's strategic plan as a stand-alone business offered the best prospect of creating long-term stockholder value. . . ," but does not disclose at what point or for what reason the Company decided to change direction and pursue a possible sale of the Company.

52.    The Registration Statement does not disclose the reason for the Company's change of financial advisor from Morgan Stanley & Co. Incorporated to Centerview in June 2016.

53.    The Registration Statement does not disclose the basis for identifying KKR as "the leading candidate for a significant minority investment in the company."

54.    The above referenced omissions are material to the Company's shareholders and should be disclosed to give shareholders the complete information needed to determine whether to vote for or against the Proposed Transaction.

**COUNT I**

**(Against All Defendants for Violations of Section 14(a)**

**of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

55.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission

may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

57.   Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

58.   The Defendants have issued the Registration Statement with the intention of soliciting shareholder support for the Proposed Transactions. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

59.   In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

60.   The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transactions.

61.   The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the

Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

62.     The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

63.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transactions.

64.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for**

**Violations of Section 20(a) of the Exchange Act)**

65.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

66.     The Individual Defendants acted as controlling persons of Pandora within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Pandora, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

67.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

68.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transactions. They were thus directly involved in preparing this document.

69.     In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

70.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

71.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

72.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transactions;

C. Directing the Individual Defendants to disseminate an Amendment to its Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:      November 27, 2017          **REICH RADCLIFFE & HOOVER LLP**
By: /s/ Adam T. Hoover
Adam T. Hoover

**LIFSHITZ & MILLER**
Joshua M. Lifshitz
Attorneys for Plaintiff

## SWORN CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

I, jonathan raul, hereby certify that:

1.  Plaintiff has reviewed the complaint and authorized the commencement of a lead plaintiff motion and/or filing of a complaint on plaintiff's behalf.

2.  I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in P securities that are the subject of this litigation during the Class Period are attached hereto as Exhibit A.

5.  I have not served as or sought to serve as a representative party on behalf of a Class under this title during the last three years.

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the Court, including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

Executed on 11/15/2018

Signature